UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW HAMPSHIRE

In Re:
  Cole, Jess  ,                  Bk. No. 17 - 11527 - BAH
      Debtor                            Chapter 13

## CHAPTER 13 PLAN DATED OCTOBER 31, 2017

**X** If this box is checked, this plan contains certain special provisions set out in paragraph 13 below. Otherwise, the plan includes no provisions deviating from LBF 3015-1A, the model plan in effect at the time of the filing of the plan in this court.

Debtor:      Jess Cole         SS # xxx-xx- 6987

1. **PLAN PAYMENTS**

    The applicable commitment period pursuant to 11 U.S.C. § 1325(b)(4) is <u>5 years</u>.

    Plan payments - Debtor to pay to trustee monthly:      $ 150

    Number of months:      x 60

    Total of monthly plan payments:      $ $9,000

    In addition, for each year during the term of the plan, all tax refunds in excess of $1,200 will be remitted within fourteen (14) days of receipt to the trustee as additional disposable income to fund the plan. Deviation from this requirement in a given year will be considered by the court only upon the filing of a motion asserting extenuating circumstances; any such motion must be filed within thirty (30) days of the date of the filing of the tax return at issue.

2. **ADMINISTRATIVE CLAIMS**

    Trustee's fee pursuant to 11 U.S.C. § 1302 and debtor's attorney's fees:

    A.    Trustee's estimated fees and expense (10% of the total to be paid):    $ 900

    B.    Attorney's fee and expenses requested to be paid through the plan, payable pursuant to AO 2016-1, notwithstanding 11 U.S.C. § 1325(a)(5)(B)(iii):    $ 2,000

    C.    Other:    $

3. **DOMESTIC SUPPORT OBLIGATIONS**

    The following DSO claims will be paid in full through the plan:

| Creditor | Estimated Total Prepetition Arrearage Claim |
|---|---|
| | $ |

4. **PRIORITY CLAIMS**

| Creditor | Interest Rate | Estimated Total Prepetition Claim |
|---|---|---|
| Internal Revenue Service | _____% | $   2,000   |
| _____ | _____% | $_____ |

5. **SECURED CLAIMS (PRIMARY RESIDENCE)**

   Residence located at: _____

   Debtor estimates the fair market value of such primary residence to be: $_____

   Since the debtor seeks to retain the collateral, and for the lien to remain in full force and effect, the claim will be treated in one of the following two manners:

   ( )   Outside the plan.  The mortgage is current and will continue to be directly payable by the debtor.
OR
   ( )   The mortgage is not current.  Regular postpetition payments will be made directly by the debtor and the prepetition arrearage only is to be paid through the plan, as follows:

| Mortgagee | Estimated Total Prepetition Arrearage |
|---|---|
| _____ | $ ____ |

6. **SECURED CLAIMS (OTHER)**

   Current regular payments are to be made directly by the debtor.  Prepetition arrearage amounts, if any, are to be paid through the plan:

| Name of Creditor | Description of Collateral | Estimated Total Prepetition Arrearage |
|---|---|---|
| RTN Federal Credit Union | 2012 Ram | $   3,000   |
| Freedom Road Financial | 2014 Arctic Cat snowmobile | $   300   |

7. **SECURED CLAIMS TO BE MODIFIED**

   The following claims are modifiable under the provisions of the Bankruptcy Code and shall be paid through the plan as indicated.

   Name of Creditor:        RTN Federal Credit Union ("RTN")
   Collateral:              2012 Ram Truck
   Valuation:               The truck evidences normal wear and tear and is in good condition.
                            Kelley Blue Book indicates the approximate value of this vehicle is $36,367.

   Debtor entered into a purchase money security agreement ("PMSA") for the Ram in November 2016. The RTN Federal Credit Union loan payoff for the PMSA loan according to a RTN statement dated October 10, 2017 was $42,469.79.  Subsequent to that date, there were certain arrearages incurred as a result of RTN's repossession of that vehicle, on or around October 23, 2017, which total no more than $3,000.  If added to the October 10th balance, the present balance would be approximately $45,469.79 as of the date of filing.  This plan does not seek to reduce the RTN purchase money loan attached to the Ram.  Debtor will continue to pay the monthly Ram vehicle loan payment of $754.66 for the remaining balance of the 6- year loan, under the original terms and conditions of the purchase money obligation.  However, any cross-collateralized obligations for personal loans owed to RTN are not part of

|  |  |
|---|---|
|  | the purchase money obligation, and will be treated as unsecured under his plan. This includes, but is not limited to a personal loan for $6,000 from RTN, entered into in October 2016, which is unrelated to the Ram. The purpose of this loan included the cost of repairs to debtor's prior vehicle. |
| Proposed Treatment: | <u>See above</u>. As noted above, the purchase money obligation for the loan to purchase the 2012 Ram in November of 2016 is approximately $45,469.79, as of the date of filing. This plan does not seek to alter the terms and obligations of the purchases money obligation entered into with RTN in November 2016 and debtor intends to continue to make the post-petition payments of $754.66 per month. Filing of this chapter 13 deaccelerates the purchase money obligation, reinstates the monthly payment of $754.66 (which will be paid directly to RTN by debtor), stops the auction of the Ram, scheduled for November 3, 2017, and entitles debtor to the return of the vehicle from RTN immediately. |
|  | Debtor estimates a $3,000 prepetition arrearage in payments and prepetition fees which will be paid to the trustee under the plan. Any other obligations owed to RTN by Debtor and purporting to be cross-collateralized and secured by the Ram will be treated as wholly unsecured pursuant to In re: Mann, 249 B.R. 831 (1st Cir. BAP 2000) and 11 USC 506(b) and 1322 without regard to 11 USC 1325(a) <u>See</u>  <u>In re: McPhilamy</u>, No. 16-010238 (Bankr.S.D.Tex.Feb. 6, 2017). Any cross-collateralized obligations owed by debtor to RTN will be entitled to share in the dividend available to unsecured creditors. |

8. **SECURED CLAIMS WHERE COLLATERAL TO BE SURRENDERED**

   Upon confirmation, the automatic stay is lifted as to any collateral treated as surrendered or abandoned and such collateral shall be deemed abandoned from the estate.

   Name of Creditor: _____
   Collateral: _____

9. **EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

   Executory contracts and unexpired leases are assumed or rejected as follows:

   | <u>Creditor/Lessor</u> <u>Property</u> <u>Description</u> | <u>Assumed/Rejected</u> | Proposed Cure <br> <u>Amount/Period</u> |
   |---|---|---|
   | _____ | _____ | $_____ |

10. **UNSECURED CLAIMS**

    Unsecured creditors' claims total <u>$27,204</u> (including, if applicable, the unsecured portion of claims modified under paragraph 7). The percentage to be paid toward these claims will be determined after the bar date for filing claims has passed and will be specified in a motion to allow claims. Unsecured creditors will begin receiving payment on a *pro rata* basis with any secured arrearage and priority claims after the issuance of such an order. If all scheduled claims are allowed, the percentage distribution to creditors is estimated at <u> 3 </u>%.

11. **GENERAL PLAN PROVISIONS**

    A. **Duty to Provide Tax Returns:** The debtor has an ongoing obligation to provide a copy of each federal income tax return (or any request for extension) directly to the trustee within seven (7) days of the filing of the return (or any request for extension) with the taxing authority.

B. **Allowance of Claims:** In the event that a proof of claim is filed in an amount different from the amount listed in this plan, the proof of claim amount shall be deemed to be the correct amount unless the debtor or another party in interest successfully objects to the proof of claim.

C. **Property of the Estate and Insurance:** All property shall remain property of the estate until discharge. Pursuant to 11 U.S.C. § 1306(b), the debtor will remain in possession of all property of the estate unless a provision of this plan, or an order of this court, specifically states otherwise. The debtor shall maintain all insurance required by law and contract upon property of the estate and the debtor's property.

D. **Retention of Lien:** All secured creditors shall retain the liens securing their claims unless otherwise stated.

E. **Application of Payments Under This Plan:**

   1. Pursuant to 11 U.S.C. § 524(i), payments received by holders and/or servicers of mortgage claims for ongoing postpetition installment payments shall be applied and credited to the debtor's mortgage account as if the account were current and no prepetition default existed on the petition date, in the order of priority specified in the note and security agreement and applicable non-bankruptcy law. Postpetition installment payments made in a timely manner under the terms of the note shall be applied and credited without penalty.

   2. **If a creditor applies payments in a manner not consistent with the terms of this plan, or applies trustee payments to postpetition costs and fees without prior approval of this court, such actions may be a violation of 11 U.S.C. § 524(i).**

F. **Duty of Mortgage Servicer to Provide Loan Information:**

   1. Upon written request of the debtor, any mortgage servicer or its successor shall provide to the debtor and/or the debtor's attorney all information with respect to the debtor's mortgage loan as it would provide absent a bankruptcy proceeding, including contractual monthly payment changes. The term "information" as used herein shall include, but is not limited to: (a) a coupon book or monthly statements to help the debtor properly make monthly payments, (b) addresses to which to send payments and to direct inquiries, (c) balance and payoff information if requested, and (d) if applicable, escrow analyses, notices of rate adjustments and the like. The debtor shall not make any claim against the mortgage servicer, the secured creditor or their successors for any violation of the automatic stay or any discharge injunction resulting from its compliance with this section.

   2. Upon written request of the debtor's counsel, any of the information requested to be provided to the debtor in paragraph F(1) above shall also be provided to the debtor's counsel.

G. **Release of Certificate of Title Upon Satisfaction of Secured Claim:**

   1. Upon satisfaction or other discharge of a security interest in a motor vehicle, mobile home, or in any other property of the bankruptcy estate for which the certificate of title is in the possession of a secured creditor, such creditor shall within fourteen (14) days after demand and, in any event, within thirty (30) days of receipt of the notice of the entry of the discharge order, execute a release of its security interest on said title or certificate, in the space provided therefore on the certificate or as the Division of Motor Vehicles prescribes, and mail or deliver the certificate and release to the debtor or to the attorney for the debtor.

   2. Confirmation of this plan shall impose an affirmative and direct duty on each such secured creditor to comply with this paragraph. This provision shall be enforced in a proceeding filed before this court and each such creditor consents to such jurisdiction by failure to file any timely objection to this plan. Such an enforcement proceeding may be filed by the debtor in this case either before or after the entry of the discharge order and either before or after the closing of this case. The debtor specifically reserves the right to file a motion to reopen this case under 11 U.S.C. § 350 to pursue the rights and claims provided for therein.

**12. LIQUIDATION ANALYSIS**

In the event of a liquidation under chapter 7, I/we would claim the state/federal exemptions, based upon which unsecured creditors would receive  0      %.

**A.    REAL ESTATE: Residential**, located at: _____

| Description | Fair Market Value | Liens | Exemption Amount and Cite | Available Chapter 7 |
|---|---|---|---|---|
|  |  |  |  |  |

Total non-exempt value:  $   0

**REAL ESTATE: Non-residential**, located at: _____

Total non-exempt value:  $   0

**B.    NON-EXEMPT TANGIBLE ASSETS**:

| Description | Fair Market Value | Liens | Exemption Amount and Cite | Available Chapter 7 |
|---|---|---|---|---|
| Household goods | $2,500 –50% of fmv | $ 0 | $2,500 11 USC 522 | $ 0 |
| Electronic Goods | $ 750 – 50% of fmv | $ 0 | $ 750  11 USC 522 | $ 0 |
| Clothing | $ 200 | $ 0 | $ 200  11 USC 522 | $ 0 |
| Jewelry | $ 200 | $ 0 | $ 200  11 USC 522 | $ 0 |
| Guns | $ 1,500 | $ 0 | $1,500  11 USC 522 | $ 0 |
| 2012 Ram | $36,367 | $42,470 | $3,775 11 USC 522 | $ 0 |
| 2014 Arctic Cat | $ 5,000 | $ 5,000 | $2,000  11 USC 522 | $ 0 |

Total non-exempt value:  $   0

**C.    NON-EXEMPT INTANGIBLE ASSETS**:

| Description | Fair Market Value | Liens | Exemption Amount and Cite | Available Chapter 7 |
|---|---|---|---|---|
| RTN CU acc'ts | $ 24 | $ 0 | $24  11 USC 522 | $ 0 |
| Digital accts | $ 380 | $ 0 | $380 11 USC 522 | $ 0 |
| Term Life Ins. | none | $ 0 | 100% 11 USC 522 | $ 0 |

Total non-exempt value:  $   0

**13. SPECIFIC NON-CONFORMING SPECIAL PLAN PROVISIONS (if any):**   If any deficiency arises as a result of the repossession or foreclosure of any secured property, that deficiency shall be included within a Chapter 13 discharge.

I declare under penalty of perjury that the foregoing is true and correct.

Date:   10/31/17                                          /s/ Jess Cole
                                                                                Jess Cole